Alright, the next piece on the Court's docket this morning is 525.0481 Board of Education of Jasper County Community Unit School District No. 1 v. Regional Board of School Trustees for the counties of Clay, Crawford, Jasper, Lawrence and Richland, Illinois. Looks like we have two young spectators in the crowd today. Welcome to all of you who are here to participate in this case. Ms. Donnelly, you are representing the appellant in this case. You may approach the lectern and proceed when you are ready. Okay, good morning, Your Honors, and may it please the Court, Counsel. My name is Jennifer Donnelly, and as I just mentioned, I do represent the plaintiff appellant, the Board of Education of Jasper Community Unit School District No. 1 in this Administrative Review Appeal. Jasper District 1 is here today to ask the Court to overturn the decision of the Regional Board of School Trustees, which granted upon re-hearing the METI's petition to detach their property from Jasper School District and annex it to Dietrich Community Unit School District 30, because as we've set forth in our briefs, we believe the METI's property is not compact and contiguous with Dietrich District 30. I think it may be helpful to begin with a short summary of how we got to where we are today. This case arises from the METI's petition to detach their property from Jasper District 1 and annex it to Dietrich District 30. The METI's property is located one and a half miles, or nearly 8,000 feet, from the Dietrich District 1 boundary line. Between the METI's property and the Dietrich boundary line are four other residential properties, all of which are located within the boundaries of Jasper District 1. So, in order to connect their property to Dietrich District 1, the METI's also sought to detach from Jasper District 1 10-foot wide strips of land that run through the four neighboring properties. Jasper District 1 opposed that petition at the administrative level on the grounds that the METI property is not compact and contiguous with Dietrich District 1, as is required by Section 7-4 of the Illinois School Code. The Regional Board of School Trustees never actually made an affirmative finding with respect to whether the METI property was, in fact, compact and contiguous. Rather, it denied Jasper's motion to dismiss so that it could hear the reasons why the METI's were seeking detachment in the first place. Let me ask you a question. You said that the METI property was not compact and contiguous. Maybe I misunderstand the law, but isn't it that the result has to be compact and contiguous? Yes, after the annexation. Right. So it doesn't matter where they start out, but the result of the detachment has to be compact and contiguous? Yes, that is correct. With Jasper County? With the annexing district. So here, it would have to be compact and contiguous with Dietrich District 1. Okay, so it has to be compact and contiguous with, right, Dietrich? Yes. Okay. But it can go ahead and separate from Jasper. It would detach from Jasper, right? Yes. Even if it were compact and contiguous? Yes. If the petition was granted, the METI property would be detached from Jasper District 1 and annexed to Dietrich. And as I look at the map, it doesn't appear to me that the METI property was compact and contiguous with Jasper at the time it started. Or was it because of those other properties in between? It was compact and contiguous, yes. Because of the other properties in between? Because it's located in Jasper District 1's school boundaries. So the METI property is encompassed in that. Okay, so all of that was within Jasper? Yes. So the other four properties that Justice Katz is referring to were also in Jasper? Correct. The last property is the only one that is adjacent to District 1's boundaries. The METI property? Dietrich boundaries. The METI property? No. Okay, which property was the most contiguous to the Dietrich property? Track number 5. I'm sorry? Track number 5. Okay. So in other words, the three other pieces of property that provided the 10 foot strips, they had to get from the plaintiff's property across those three pieces of property that were not contiguous with the annexing district. And then when it hit that plot 5 or whatever you called it, that one, since it was contiguous with Dietrich, that gave, and they gave you 10 feet there. Then that put METI's property theoretically in contact with the Dietrich school district. Right, so track number 5 is still located in Jasper district school boundaries, but it borders the Dietrich district boundaries. Right, and they gave up 10 feet of that property line on that border for the METs to be able to, okay. And then following up on that, I'm looking at exhibit A, which of the record is C20, which is the map. So the METI, is it METI? METI. The METI property would be just beyond track 5, just at the edge of track 5. No, the METI property is track 1 on that map. Oh, I'm sorry, I have it reversed. Okay, so the METI property is track 1. Track 5 was the closest to Dietrich. Correct. Okay, so 1, 2, 3, and 4 were in Jasper. All 5 are in Jasper. All 5 are in Jasper, and 5 is in Tigris.  Okay. We have to get the language correct.  It's adjacent to, you know, at a bus. Right, understood. That's what I wanted to make sure, because you were going through the facts, and I think we have the facts. I'm more interested in the argument, not to cut you short, and certainly the justices will ask, but this compact and contiguous language is how it has to end up, right? Correct. So can you talk to us about why this would not have been compact and contiguous, which is what I think your argument is? Yes, that's correct.  I interrupted your note. That's okay. I'll get back to those if I can. You can adjust. Okay, so as this Court is aware, there really is no Illinois case law out there that actually considers the propriety of using this concept of strip annexation, which in this case is these narrow, tensile strips of land to connect a property to a school district in order to annex to it. But there is an abundance of Illinois case law spanning over a century, where courts have interpreted similar statutory language regarding compactness and contiguity in comparable situations. Okay, so I'll stop you there because I think counsel would argue that the comparable situations maybe he doesn't agree with. We're talking annexation for corporate villages, towns, cities, things of that nature that involve infrastructure and things of that nature. School district has a different requirement when it makes these determinations, doesn't it? Requiring a full picture of the betterment for the kids' situation, the betterment for the community, so forth and so on, which is somewhat of a less burden than the cities have when it comes to providing, say, sewer and water and electric and things of that nature. So when you say there's no case law on point to strip annexation, then there's nothing that prohibits the way that this decision came down. But you're saying simply because there's some strip annexation cases out there involving totally different non-school district situations that we should borrow from that reasoning in this situation? Yes, because the school code does not define compact and contiguous. And this other case law that has been developed for a century does define it. Well, there's one of the cases I don't remember if you cited it or your opponent cited it regarding where I believe it was a school district that had allowed some of these detachments and annexations that created islands. Yes, that's the Rockford. Right, the Rockford case. And the Rockford case then allowed for petitioners to leave the Rockford school district and go to a different one or vice versa. But there was no 10-foot strip. There was no nothing. And I keep thinking back to when these kids are probably too young to play this, but when you played tag and it was electricity to home base, you know, four people could stand there and touch. And the guy at the end who isn't actually touching home base is still on base because of the electricity, right? There was none of that in the Rockford case. So those parcels were surrounded by the school district that they were leaving. So we have a different situation here. In that case, I don't know how it applies because we do have, unless we go with your argument, that the 10-foot annexations or the 10-foot strips are a ruse to allow for that continuous touching to the other school district. But that wasn't the whole reason this court or this decision was rendered. It was based on three miles from the Dietrich schools, 13 miles to the Jasper schools. The fact that the family had family in Dietrich. The family went to church in Dietrich. The family participated in activities in Dietrich to the exclusion of, I suppose they didn't do those things in Jasper because Jasper is further away. So how is this not in the overall picture in the best interest of these kids and this family to move to Dietrich? Well, Your Honor, those factors don't matter unless we're concluding that the property is compact and contiguous. That is a mandatory prerequisite that must be met before the regional board can consider these conditional factors. But the only reason it wouldn't be is if we agree with your argument that the 10-foot strips is an impermissible way of creating that. That is accurate, yes. And there's no case law to suggest that school districts can't use that. And just to clarify my mind too, Jasper allows some of these types of petitions, having people from the other school district come into Jasper, right? No, they have not. So those situations that were cited in your punishment brief, those were misleading? Correct. The Booster petition was another case that went down the same point as the Betty's and the underlying court. The district, Jasper, also opposed that motion on the same grounds. They did actually come in, the regional board granted that petition, and Jasper did not appeal that because we chose to appeal this one. We don't have to appeal every single case. The Eifert petition that is mentioned in the record, that didn't even happen until after this matter. And that was a reverse though, right? That was where Jasper annexed someone into Jasper School District, right? The Eifert petition was similar to this one, but because the Booster petition had been granted, the Eifert petition, the property was then compact and contiguous with Diedrich District 30. But Eifert didn't leave Jasper to go to Diedrich, didn't it leave Diedrich to come to Jasper? I believe Eifert left Jasper to go to Diedrich. But Booster came to Jasper. I can't remember exactly. I thought it was the opposite, but okay. So we have two cases that are similar regardless of which one came or went. Those are similar because they didn't involve a 10-foot strip. They didn't involve any kind of – The Booster one did, but they ended up compact and contiguous, what I thought you said. But that's the same thing that – Okay, so based on what Justice Gates is saying, if we allow for the 10-foot strips to be a proper way of creating a contiguous border with Diedrich, then the result would be that the Medi property would be contiguous. Is that correct? If the 10-foot strips were allowed to – Yes, yes. Same as the Diedrich. I'm sorry, same as the other – the one case that you were just referring to that also had the 10-foot strip. Yes, if the court found that a 10-foot strip can be used to annex property one and a half miles away from the annexing school district, then yes, that would be the case. But here, this issue is similar to the Rockford case. Even though Rockford was islands – I mean, we're talking a 10-foot strip of land. You can't even get a bus on that land. And there's no way that Diedrich District can access the Medi property without traveling over Jasper School District grounds. And I thought the Rockford case actually found that the islands were not permissible. They did. And that was even though there was a charter school involved. Correct. Okay. So they didn't allow – Rockford did not allow this to happen. Because of having no contiguous border with the annexing district, correct? Correct. And just to piggyback on this, what difference does the – I know the trial judge relied on course of conduct in coming up with a decision in this case. What effect should that even have on this court? It shouldn't. I mean, an agency like the hearing board here shouldn't be allowed to circumvent the law by creating this practice that violates it. So I don't think that that should have any impact on your decision today. So following up on that, when Justice Schiller is talking about the impact of prior decisions, if I put that in with what Justice Barberis is saying, he's saying that the result, if we allow this common practice, is to make the property compact and contiguous. I think that's what everybody's saying. If this were allowed, I just want to create in my own mind a picture of what this would look like, that many property would be compact and contiguous. Right? If the annexation – If the court says that it is, then it is. Yes. But the past practice of allowing this, it seems to me that with regard to these other properties, you might have somebody living in a different school district within the same parcel of property because of the properties in between the many property and where they began with parcel number five. Am I correct about that? That is correct. And when we talk about infrastructure being different than for a city, when we talk about a school bus, we talk about state-mandated requirements for children, school buses, and getting school buses to the individuals.  That is correct. So do school districts have their own infrastructure that this court should be concerned about? They absolutely do. And I think that we briefed that in our reply. Right. And would you address that just briefly for us? Yes. So school districts have to be able to plan. Right? They need to determine how many buses they need, what routes those are going to take, whether there's any special circumstances with respect to special education, transportation, things of that nature. How many teachers are they going to need? They want to have coherent school boundaries. What word did you use? Coherent? Yes. Coherent school boundaries. What does that mean? Coherent. As opposed to compact and contiguous. Similar. Okay. I mean, school districts rely on knowing which houses are within their boundaries so that they can plan on how best to serve the students in that area. I'm sorry. I'm sorry. I was going to say the whole child consideration, which I think Justice Barberos was asking about, that is something that's considered after you determine the compact and contiguous. Correct. That language.  Go ahead. So, assuming that we find that these properties should not have been allowed to use the 10-foot strips to go to Deterrent, or I'm sorry, assuming we allow that it should, how does that change Jasper's infrastructure for any other children in the area? You don't say the neighbors of the many properties. I mean, they're still going to run the same bus by the same route for any other children in that immediate vicinity, correct? Right. But if we allow something like this to happen, and then people all over start doing this, same kind of I'm going to borrow 10-foot strips from my neighbors five miles away to attach to this school district I want to send my kids to, 10 miles away, 15 miles away. I mean, where do we stop? Well, I would say that it would be a difficult determination, but if somebody lives 20 miles away from one school and 25 miles from another school, maybe the 20-mile strip would be the best way to go because they're closer to that school by five miles. So, I mean, if it makes sense, I think it could be doable. If it doesn't make sense, you know, to avoid a school district, you go 20-mile strips to go someplace else, that's perhaps a different story. But I still take issue with the fact that Jasper has allowed this and other similar situations either to its benefit, and that was the other question I wanted to ask, and I know your time is up and you'll have some time to rebut it, but while it's fresh in my mind, let me ask, what is the detriment, what is the downside for Jasper if this were to stand and the Metis went to Deter? So one of the downsides is that they lose the property tax from that property. Additionally, if other people get wind of this being allowed, and all kinds of other families might start pulling out of the district, so they're going to lose a lot more than just this one family. Is Jasper, and I don't know, these school districts, I don't know that they're, is Jasper school district considered a lesser district than Deter? No. In terms of educational opportunities? No, it is not. What does the state scorecard say for the two districts? That's a good question, and I do not know the answer off the top of my head. Okay. Well, that would have answered your question. So I have a quick question. I'm looking at this map. You know, I think my question is what happens to all these parcels in between, and I think Justice Cates was talking about that before. I mean, you mentioned you can't get a bus on it. What if you built a house and it was on both sides of that line? You could theoretically have a child in one bedroom and a child in another bedroom, and they're in different school districts. Am I wrong about that? That's right, because under the residency laws for schools, that could happen. So this could create some really outrageous results. It could. That would be the same result of someone bought a piece of property that straddled a county line and built their house right on the county line. It's the same situation, right? Well, they probably wouldn't be straddling the school district boundaries. Well, let's say that they did buy a piece of property that was on the school district line and built their house on it. Then you'd have this problem.  So it doesn't necessarily swing on this 10-foot strip. It could be that problem could exist without this problem. I think it's much less likely. I guess you'd have to look at the plot curve and subdivision. Yes. Okay. You will have, Ms. Donnelly, some time for rebuttal after we hear from Mr. Myers. Okay. Thank you. Okay. And, Mr. Myers, should you require it, we'll give you a few extra minutes since Ms. Donnelly had a little extra time based on the questioning of the justices. In fairness, I tied myself, and it was not 15 minutes. Was it more or less? It was less. Okay. I don't know what else to say. So it may please the Court, Counsel. My name is James Richard Myers. I represent Matthew and Emily Dabby in this appeal. Matthew and Emily are here today with two of their daughters. They also have a son all of school age. I have my script here, but I'm going to go off it a little bit because I want to try and address these questions that were asked. If you look at the infrastructure concerns of the strip annexation cases, they're out there. I acknowledge they're all out there. Strip annexation is all out if you're a municipality. But those places, if you have strip annexation of some 10-foot strips down to somebody's house that's a mile away, the city's got to run water lines. The city's got to run electricity. The city's got to have gas and sewer out there. And it's just impractical to run that kind of infrastructure down a 10-foot strip. Plus, this is too common, and all those infrastructure things, they want loops. All electric lines, they want loops. All sewer lines, they want loops because if there's a problem with one of the lines, then they have another way to get you your municipal services. But the city annexation cases that you're talking about, they don't use 10-foot strips. They usually limit it to 30 feet, I think, because of easement right-of-ways. Could be. There's strips. You're talking about strips. Nobody talks about a 10-foot strip because you can't run a power line down that. Correct. And so even with a 30-foot strip, they don't allow that in municipalities. Correct. You're right. But the concept is a strip. This is much smaller. It's a 10-foot strip. What you're trying to do is much smaller, and school districts do have an obligation to provide snow removal for buses. I don't think that's correct. I think the municipality has an obligation to do that. Okay, but they need to make sure that the ability to pick up a child with a bus is appropriate, whether they do the snow removal or somebody else. That's an excellent point. If you look at the map and what's happening here, there were two cases of annexation and detachment that came up at the same time, the Metis and the Brewsters. The Metis wanted out of Jasper and into Dietrich, and the Brewsters wanted into Jasper from Clay. They were both granted. They opposed both of them. That's true. They filed the same motion to dismiss based on this strip annexation theory, and then they appealed the Metis case. If you look at the Metis case, their property is in the district of Jasper. There's no change to anything that has to do with a bus. They would have to provide a bus around there anyway. So when you get to the Brewster property, which is down here a mile and a half from their prior border, they now have to go out a mile and a half from where they used to be to get those kids. So to say that this Metis case is— We don't know. First of all, that's not before the court. But second of all, we don't know what circumstances allowed for all of that to occur. So we can't consider that. And personally, I can tell you I won't consider that. That's fine. I don't know. But the question was about the infrastructure and the concerns of the burdens on Jasper, and there really aren't any infrastructure burdens that change on Jasper because of the Metis leaving the district. There just simply aren't. So there's no obligation in your mind for the Metis to—for Jasper to worry about picking up the Metis children? They all have to. They're in Detrick schools. But when they were in Jasper, that would not have been an issue either. They would have had to pick them up if they were in the Jasper schools. And how would they have done that? I assume they would have drove a bus up to the bottom. I mean, would there be a road around this 10-foot strip? There are roads around the 10-foot strip. They don't have—the school district doesn't have to use the 10-foot strip. They're not restricted to that process. That's what I'm asking you is, without this detachment, how would these children have been picked up by Jasper? I assume by the bus. You don't know, right? Well, again, I don't know. You're making an assumption. I am making an assumption. Okay. So I'm just asking if you know the answer to my question. No, I don't. I don't know how— Okay, just say it, and then we'll be done with that. I'm trying to say it. Could I follow up on that? Absolutely, but you know what? This is not a debate. Just so you know, you're in an appellate court, and this is not a debate. I'm not trying to debate. So you need to be a little more respectful to the justices that are asking you questions. I feel like I am, but I'm sorry. If you continue, as the presiding justice, I'm going to ask that you be held in contempt. I'm sorry. So you are that close. I'm sorry. Okay. Justice Berman? So with regard to the bus route, the Mennies have been in Jasper School District, and they have been offered where there is a school bus pickup for their property currently. Yeah, I assume. Where the other children in that area who utilize the school bus are picked up along that route. Correct. So there would be no change to the route for Jasper School District in picking up kids in that area if the Mennie property were annexed into Diedrich. I wouldn't think so. The only real question is—and it's not really an issue because Diedrich isn't here— arguing they don't want the Mennie property— is that Diedrich would be required to pick up the kids. Correct. But I believe there was some testimony or some evidence that both mom and dad work in Diedrich and drive by the school and would be dropping the kids off. There was testimony at the hearing. So it's not really an issue with regard to the bussing schedule or the infrastructure of the bus for this. I don't believe that Jasper has any detriment to their infrastructure. Gotcha. Okay. The Mennies, we believe this case comes down to the issue of—well, there's two. There's the standard of review and the difference of opinion on the standard of review counsel. But it also comes down to what's compact and contiguous rules. In this case, I'm not sure you can argue that the properties are not contiguous because they are. They have 10-foot strips to them. That might be minimal contiguity, but that is contiguity. That separates the case from the Rockford case because there were islands in the Rockford case. It had no contiguous connection to the district that they were trying to annex into. Counsel, could you remind me, what do you believe that the standard of review is? I believe the standard of review is that a clearly erroneous standard because this is a mixed question of law and fact. So just to, I guess, reiterate from my understanding, the 10-foot strips involved in this particular situation would not require any type of infrastructure to be installed on them for this to be a workable situation. That's correct. That's correct. To jump again, there was the question about whether someone would be in two school districts, they built a house over this. It would be true that that would be the case if they built right on the line as it exists now. But in the record, the Jasper County representative specifically stated that that was not a concern. It was not a concern about development on this 10-foot strip. So in this particular case, that's not a concern. What is to prevent a person or a family that wants to detach from going to their neighbors and saying, hey, will you give me 10 feet so I can get into this other school district? I'm not sure if it prevents that from happening, but then the individual... But is that what happens here? Yeah. Yeah? Yeah. So anybody could do that? We could have houses, as the school district is claiming, in different locations, maybe 5 miles away, 10 miles away? They would give up the land. That would be true if they didn't have to go petition the Regional Board of Education and get approval and meet all those criteria, including the main one that prevents the apparent big issue here about people 20, 30, 50 miles away wanting to do this, is those people aren't connected to the municipality that they're trying to annex into. They don't live 3 miles from the Dietrich School. They live 50 miles from the Dietrich School. And they won't meet all the criteria about having their community be Dietrich and not Jasper. So all those criteria would prevent that. What criteria are you talking about? I'm talking about the criteria that have to be met in this case. Well, I understand that there are a lot of criteria, but isn't the first one compact and contiguous? I think that is one of the criteria, yes. You don't think that's the first criteria? I think that that's one of the criteria that has to be met in order to grant these petitions, yes. Is it a conditional criterion? In other words, you don't meet the other factors first before you get to that? I'm not sure that's what the statute says. Even if it is, even if it is, that's determined in a different way. And the strip annexation theory has never been applied to school districts. And there are differences between school districts and municipalities as to why you should not apply it. And the safeguard against anybody and their brother wanting to come into a school district is they get to say, look, I've strung up 50 neighbors and now I'm going to a new district even though I'm 50 miles away. They have to file a petition with the regional school board and not only show that they're compact and contiguous, but show that they are members of the community and identify with that community. And it's in the best interest of their children and the community at large to have this happen. And I would suggest that if you live 50 miles away and had a 10-foot strip 50 miles wide, you wouldn't meet those criteria. But, I mean, that's not what we have here. We have a 1.3 miles between where the Metis live and the district line. And how far is the town where they go to church from up the Jasper School District? It's about three to five miles. Three to five miles. You're talking from the district line or are you talking from the actual town? The actual town. They live about 20 miles from Newton, which is the town that all the schools are in for Jasper. And they live three or five miles from the district. So they live, the child would have to travel 20 miles to go to the town of Jasper or to the school district, the school? The school is in Newton. There's no town of Jasper. That's the county. So it would be 20 miles. Yes. There's testimony in the record about the length of that trip and how early the kids have to be picked up. I think it was 7 o'clock to get to school by 8.30 and then return. Significant time savings for the kids if they were to go to the district school. So all of those considerations are something that the regional school board has to consider when it has one of these petitions before it in addition to the contiguous nature of the problem. Correct. I want to emphasize, if I can, both parties cite the Rockford case. That's the case up north that had the islands of potential annexation that worked a lot because they were all contiguous. In that case, they cite people versus Decatur school district. And they cite that case and there's a quote from it that I think is relevant here talking about the compactness of a school district. And it says in that case, that's Decatur, people versus Decatur school district, 45 Hill Ave., 2nd, 33. Again, cited in the Rockford case. A compact school district is one so closely united and so nearly adjacent to school buildings that all students may conveniently travel from their homes to school buildings and return the same day in a reasonable length of time and with a reasonable degree of comfort. And I'm not saying that because I believe that's the legal standard that's in that case. But what I want to emphasize is in these cases about annexation and detachment, we're talking about kids. And we talk about the schools and we're talking about what's in kids' best interest. And the focus is not just on where some lines are drawn. The focus is on children and what's in the children's best interest tempered with what's in the school district's best interest. Which in this case, I mean, we're talking about 10-foot strips, right? But the Metis or anybody else could go to their neighbor and say, hey, why don't you petition for your whole property? Why don't you petition for your whole property being in the Dietrich school district and detached from Jasper? And then you have, you know, 40-acre tracks down the way all the way to Metis. That would be a detriment to Jasper County because they would lose more tax base than they're losing now. They're losing a 10-foot strip of tax base, not 40 acres of tax base times four. So as part of a way, these recent reports have to weigh the students and the community and the districts that are being affected. And one of those is you can't take significant, you know, you can't break the district that you're leaving. So one way to temper that is to only use 10-foot strips and not ask that the whole 80 acres and the whole 40 acres all the way down the line gets removed from the district. Where do we draw the line? I don't know that I know where the line is drawn. That would be a case-by-case basis in regional boards that decide these things for their school districts and their students. And they would have to decide that, you know, if somebody's 10 miles out with 10-foot strips, that they're probably not associated with the community like they are. Or if that's too much property, it's going to be too big of a burden on the tax base. It's not a – the appellant wants to say this is a hard-line rule and it's based on what is drawn on the map, and it's not. It's a commodulation of all these different factors that include best interests of kids and best interests of communities. And compact and contiguous is one of those things that they have to say is met. And in this case, they clearly did because they brought it up at the hearing. They said, we don't think this is compact and confused. And the regional school board says, your motion to dismiss is denied. So it wasn't crossed over. They actually considered it. There may be a disagreement on whether compact and contiguous is something that has to be the result first, and then we consider the interests of the child and the community, or whether it's all intertwined at once. And I think your position, if I'm correct, is it's all interjoined at once.  Okay. And you were correct that it's the after situation we look at. We don't look at the before, who knows what the before is. But the after, both districts have to be compact and contiguous. As a result of the – As a result of the detachment and the annexation.  That's correct. Okay. I have one last question. And that is simply, we asked the council about the scorecard for the two districts. Are you aware of the scorecard? I am. I think it's in the record in some fashion. But my understanding is Dietrich is exemplary and Jasper is about state average. That's my understanding. I think that was testified to in the – Okay. I thought I recalled something about that, but that's why I asked. Dietrich has better overall grades than Jasper. Okay. Any questions? Okay. Thank you for your time. Okay. Ms. Donnelly? Yes, thank you. I just have a couple points that I want to make. First is probably more of a public policy note, but I think it's important here. The Metis bought this property in Jasper County with full knowledge that they were located in Jasper school district. And I think that matters because if we allow these kind of 10-foot strips to connect, artificially connect almost a property one and a half miles away from the desirable school district, it's going to cause all kinds of issues. So you're arguing a public policy. Is it our purview to consider the public policy or something like this, or is that the legislature? I absolutely think this court can consider the public policy. The public policy of the child's best interest is also being asked of us, isn't it? By Mr. Myers. Isn't he asking us to consider the public policy? Did I misunderstand him? I think that's probably an accurate depiction. I think there's a lot of public policy floating around in this. Yeah, I mean, I think really you don't even have to get to public policy. I think this is a matter of statutory interpretation. I do believe the standard of review is de novo. This court has to decide what is considered compact and contiguous and whether or not these 10-foot strips can make a property compact and contiguous. And I would argue that even if it's contiguous, it's really not compact. I was going to piggyback on Justice Case's earlier question about which comes first. Which question comes first, or are they all lumped together? In your opinion, we have to address this strip annexation issue first. Is that correct? Yes. And under what authority? 7-4 of the Illinois School Code, which is titled Requirements for Granting a Petition, I believe. And it specifically requires the regional board to determine, and the petitioners have the burden of showing, proving that their property will be compact and contiguous with the annexing school district if it's granted. So that is the first step in this process. After that is determined, that's really when the regional board should then move on to a hearing and consider these other conditional factors. So why do you believe it's de novo with you? Because I do believe this is purely a matter of statutory interpretation. There aren't any disputed facts here. So what you believe is de novo is what, but you agree that the property would be contiguous but not compact. If the debts weren't allowed. I do not. I do not believe that the 10-foot strips can establish contiguity. I believe it has to be a bigger, like, Excuse me one second. I just want to follow up on this if I could. So I'm back at de novo review. The question of law that you want us to consider is what is compact and contiguous in light of these facts? Yes, the question I want you to consider is whether or not the type of strip annexation at issue here, which is these narrow 10-foot strips of land, can be used to establish compactness and contiguity as contemplated by the school code. Okay, so your position as a legal position is you can never use 10-foot strips to establish compacted contiguity. If I turn your request around, am I turning it around correctly? Yes, that is accurate. Okay, that's what I wanted to understand. Okay, I'm sorry, just a second. I think we're good. Okay. And I guess when you say there's no dispute in the record, I'm having a little trouble with that because I think they dispute what is compact and contiguous. There's a dispute with respect to what the law is, yes, but not the underlying facts. Okay. I do want to just clarify. You said that when asked correctly from Justice Cates that it's your belief that it would not be contiguous even if the 10-foot strips were permitted. Contiguous, and she distinguished contiguous from compactness, and it would be contiguous if the 10-foot strips were allowed, as in her scenario, and the 10-foot strip touched the Diedrich School District and also ended up on the Mebby property, it would be contiguous. It may not be compact, as she was trying to get at, but it would still be contiguous, would it not, if the properties touched? Well, I'm looking back in the cases that we cited with respect to the municipal annexation where they have defined compact and contiguous. So, for example, in that Village of Streamwood case, the Supreme Court said contiguous must be adjacent to or parallel to the existing municipal limits, and then it went on to say, to condone the unnatural and obviously unreasonable annexation as attempted by the village in that case would require the court to permit strip or corridor annexation which has always been condemned by the courts of the state and has never been permitted by the legislature. And that's based on the infrastructure requirements of municipalities, which we don't have here. So, if... Is that what that case says? It's an infrastructure consideration, Streamwood? Or does it just say strip annexation is prohibited? It just says strip annexation is prohibited. Then the Supreme Court went on in the City of Belleville case. They reiterated that when they said the purpose of the contiguity requirement is to permit the natural and gradual extension of boundaries which enjoin one another in a reasonably substantial physical sense. Well, and I'm not going to... I certainly understand what you're saying, and what that case is saying. And it's again in helping to fashion how cities and municipalities grow, which is different than the school districts. So, I think we're... My opinion is that that's apples and oranges. Certainly, I understand if there's disagreement with my opinion. I appreciate your opinion. But, yeah. So, I get what you're saying. I'm just... In my mind, again, I go back to that very simplistic electricity tag game. If it's touching, then it's contiguous. It may not be compact. I may be 50 yards away from the home base, but I'm still touching if electricity is allowed in that game. In this, if 10-foot strips are my fellow tag players, and one of them is on home base, and I'm touching all of them, it's contiguous. Not compact, but contiguous. So, that was the only issue I took when you answered Justice Cates' question with, no, I don't believe it would be contiguous. I think contiguous may be compact, perhaps not. Let me ask you a question, because I don't remember all my city attorney work when I did it. But, in my recollection, just because something touches something else in the annexation room, it does not make it contiguous. And I may be wrong on that. But you cited the strip annexation cases in the municipality context. I assume you read them. I did. Is Justice Barberos' representation that just because you touch, it's contiguous correct? Not according to the case law, which I understand that it deals with municipal infrastructure. But my question to you directly, because I haven't read all those cases yet, is just because you touch something in the strip annexation and municipality cases, my recollection is you are not contiguous under the law. Those cases do say that. Just because you touch something or corner something does not mean you are contiguous. It requires more. Okay, that's what I thought. Any questions? Obviously, thousands of questions. You don't have any time. Thank you both for your arguments. Thank you, Yamane. Yes. This is a very interesting case and obviously has a great impact on not just the family here but school districts throughout the state of Illinois. So we take it very seriously. And for those of you in the audience who have never been here before, we appreciate your coming. But as you can see from your counsel's arguments, they're very passionate about the school districts and have represented you well. So we have to take this matter under advisement, which means that the court will confer on the legal arguments being presented here today, and then we will issue an order or an opinion, depending on the perspective of the court, the justices here. And that could take a few months, just so you know. It's not going to be tomorrow. But since you've not been through this, I wanted to make sure you understood that the expectations should not be high that it's going to be next week. Okay? So thank you, counsel, for your arguments here today. We appreciate it. The matter will be taken under advisement. We'll issue an order in due course.